1
2
3                         UNITED STATES DISTRICT COURT
4                                DISTRICT OF NEVADA
5                                       * * *
6   RODERICK SKINNER,                              Case No. 3:21-cv-00318-MMD
7                              Petitioner,
8          v.                                                  ORDER
9   PERRY RUSSELL, *et al.*,
10                            Respondents.
11
12
13  **I.      INTRODUCTION**
14          This case is a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254
15  brought by Roderick Skinner, who is incarcerated in the custody of the Nevada
16  Department of Corrections at Northern Nevada Correctional Center. For the reasons
17  below, the Court will deny Skinner's habeas petition.
18  **II.     BACKGROUND**
19          Skinner is serving a life sentence with eligibility for parole after five years for
20  promotion of a sexual performance of a minor, age 14 or older. Skinner's conviction was
21  the result of a guilty plea entered in the Second Judicial District Court of the State of
22  Nevada in and for the County of Washoe. (ECF No. 18-6.) While probation was a
23  sentencing option, the state district court opted against it after conducting a lengthy
24  sentencing hearing. (ECF No. 18-38 at 105-307.) Skinner appealed his judgment of
25  conviction and argued that the trial judge abused his discretion by sentencing him to
26  prison rather than granting him probation, which would have led to his immediate
27
28

deportation to Australia. (ECF No. 18-21.) The Nevada Court of Appeals rejected that argument and affirmed the judgment of conviction. (ECF No. 18-28.)

Skinner thereafter filed a state petition for writ of habeas corpus, seeking post-conviction relief. (ECF No. 18-33.) The state district court appointed counsel, granted leave to conduct discovery, held an evidentiary hearing, and, ultimately, denied relief. (ECF Nos. 18-43, 19-14, 19-26, 19-28) Skinner appealed and argued that the state district court erred in finding that his constitutional rights were not violated when the Washoe County Sheriff's Office destroyed evidence supporting his innocence prior to him having an opportunity to pursue post-conviction relief. (ECF No. 19-40.) The Nevada Court of Appeals affirmed the denial of Skinner's habeas petition, reasoning that post-conviction proceedings are not part of the criminal proceedings and that convicted persons do not have the same due process rights as those who are presumed innocent. (ECF No. 19-46.) Skinner petitioned the Nevada Supreme Court for review of the order of affirmance. (ECF No. 9 at 240-49). The Nevada Supreme Court denied the petition. (*Id*. at 276.)

Skinner then filed his federal habeas petition and asserted three claims for relief: (1) Skinner's due process rights were violated when the state destroyed the computer evidence subsequent to his conviction, but prior to the resolution of his state habeas petition (Ground 1); (2) Skinner's trial counsel provided ineffective assistance, and Skinner's guilty plea was not voluntary because counsel failed to adequately the explain charges against him and promised him he would receive probation (Ground 2); and (3) several of Skinner's constitutional rights were violated because his trial counsel engaged in plea negotiations while Skinner was under medical duress (Ground 3). (*Id*. at 3-8.)

Respondents moved to dismiss Ground 1, arguing that the claim was foreclosed by Skinner's plea of guilty to the charge for which he was convicted. (ECF No. 17.) Concluding that Respondents' argument was meritorious, this Court granted the motion. (ECF No. 22.) As an alternative ground for denying Ground 1, the Court also concluded that, under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), it must defer to the Nevada courts' rejection of Ground 1 on the merits. (*Id*.)

1   Respondents then filed an answer to the remaining two claims. (ECF No. 39.)

2   Skinner filed a reply. (ECF No. 44.) Thus, the case is ready for a decision on the merits.

3   **III.   STANDARDS OF REVIEW**

4   Skinner did not raise either of his remaining claims on appeal in the state court, so

5   the claims are unexhausted. *See Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir.

6   2003) (en banc). At this point, Skinner has no state remedies available because the claims

7   are either time-barred under NRS § 34.726 or successive under NRS § 34.810. Thus, the

8   claims are procedurally barred for the purposes of federal court review. *See Cooper v.*

9   *Neven*, 641 F.3d 322, 327 (9th Cir. 2011). However, the state waived its procedural

10  default defense by not raising it in their motion to dismiss or their answer. *See Chaker v.*

11  *Crogan*, 428 F.3d 1215, 1220 (9th Cir. 2005). And because the Nevada Supreme Court

12  has not adjudicated Skinner's claims on the merits, this Court reviews the claim under a

13  *de novo* standard rather than the deferential standard of review that would otherwise

14  apply under 28 U.S.C. § 2254(d). *See id*. at 1221; *see also Pirtle v. Morgan*, 313 F.3d

15  1160, 1167 (9th Cir. 2002). "Nonetheless, under AEDPA, factual determinations by the

16  state court are presumed correct and can be rebutted only by clear and convincing

17  evidence." *Pirtle*, 313 F.3d at 1168 (citing *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001);

18  28 U.S.C. § 2254(e)).

19  **IV.   DISCUSSION**

20  **A.   Ground 2**

21  In Ground 2, Skinner alleges two bases for finding that his guilty plea is in violation

22  of his rights to due process and effective assistance of counsel. First, he claims that he

23  entered his guilty plea based on his counsel's promise that he would receive probation.

24  (ECF No. 9 at 5.) Second, he contends, incorporating Ground Eight of his state habeas

25  petition, that his guilty plea was not knowing, intelligent, and voluntary because he did not

26  understand, and counsel did not explain, the elements of the charge brought against him.

27  (*Id*. (referencing ECF No. 18-37 at 38-39).) Skinner further contends that he would have

28  insisted on going to trial if the elements had been explained to him. (*Id*.).

The U.S. Supreme Court has recognized a right under the Due Process Clause to have one's guilty plea be both knowing and voluntary. *See Boykin v. Alabama*, 395 U.S. 238, 242–43 (1969). A guilty plea is voluntary for due process purposes only if a defendant has received notice of the true nature of the charges against him. *Henderson v. Morgan*, 426 U.S. 637, 645 (1976). In addition, a guilty plea is not "voluntary," and thus invalid, when it is the product of threats, improper promises, or other forms of wrongful coercion. *Brady v. United States*, 397 U.S. 742, 754-55 (1970). Also, a plea of guilty is voluntary and knowing only if it is "entered by one fully aware of the direct consequences" of his plea. *Id*. at 755. When an ineffective assistance of counsel claim bears on a defendant's decision to enter a guilty plea, the petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 57, 59 (1985) (citations omitted).

In rejecting the first portion of Ground 2, the state district court outlined and explained several reasons why Skinner was not entitled to relief. First, the state district court noted that Skinner conceded in his testimony at the post-conviction evidentiary hearing that his counsel did not guarantee that he would receive probation. (ECF No. 19-28 at 61.) Second, the court cited to the testimony of Skinner's trial counsel, Christopher Frey, at the same hearing. (*Id*. at 62.) Specifically, the court pointed to Frey's testimony that, because of the judge's comments emphasizing his own sentencing discretion, Frey was "cautious about reminding" Skinner that the sentence was solely up to the judge. (*Id*.) In addition, Frey was adamant in his testimony that he had never assured Skinner that he would receive probation. (*Id*.)

Third, the state district court pointed to Skinner's plea colloquy, during which the judge explained to Skinner that a prison term was a possible sentencing outcome, and also had Skinner confirm that he had not been promised anything in exchange for his plea. (*Id*.) In addition, the judge explicitly warned Skinner, before accepting his plea, that

the judge was not bound by the plea agreement and that the judge retained sole discretion as to Skinner's sentence. (*Id*.) Finally, the court cited language in the written guilty plea agreement indicating that Skinner was unlikely to receive probation. (*Id*. at 63.)

Turning to the second portion of Ground 2, the state district court again outlined and explained several reasons why Skinner was not entitled to relief. First, the court recounted Skinner's experience as a law enforcement officer in Australia and noted that it undermined the notion that Skinner lacked the sophistication to understand the elements of the criminal charges against him. (*Id.* at 16.)

Second, the state district court again cited Frey's testimony at the post-conviction evidentiary hearing. (*Id*. at 16-17.) The court noted that Frey had testified that it was not necessary to cajole Skinner into entering a guilty plea, and rather than maintain his innocence, Skinner made comments to Frey that suggested that he knew he was guilty to some extent. (*Id*.) Frey further testified that, as the evidence began to mount, Skinner began to recognize that there could be enough evidence to convict him, and he began to accept responsibility for the crime. (*Id*.) In finding that Skinner had not been "ill-informed by counsel," the court quoted the following portion of counsel's testimony:

> "Mr. Skinner was completely lucid. He understood the terms and examines [sic] of the plea agreement. He *understood the charge*. He *understood the elements*. He *understood the facts*. I had no qualms about proceeding to an entry of plea with Mr. Skinner endorsing that as the next step in the representation whatsoever. He did not protest. He did not indicate a lack of understanding. He *endorsed the plea*. He took responsibility for the conduct memorialized in the guilty-plea memorandum. There were no tears. There was no hesitation much. There was no reluctance. There was [sic] no non-verbal cues that indicates that he had second thoughts. This was a *joint decision* over the course of a number of weeks….I had zero qualms about proceeding to the entry of plea in this case."

(*Id*. at 17 (quoting ECF No. 19-26 at 176-77) (emphasis added by state district court).)

Third, the state district court cited statements Skinner had made to the Division of Probation and Parole and at his sentencing hearing indicating he understood the nature of the charges against him. (*Id*. at 17-18.) Lastly, the court recounted the comprehensive colloquy it had conducted before accepting Skinner's plea, which included the state's

1  recitation of the details of the charge against Skinner and Skinner's acknowledgment

2  under oath that he had understood elements of the charge. (*Id*. at 18.)

3      While this Court must consider Skinner's claims *de novo*, the state court's factual

4  determinations are presumed correct and can be rebutted only by clear and convincing

5  evidence. *Pirtle*, 313 F.3d at 1168. All of the state court's factual findings are well-

6  supported by the record. As for rebutting the presumption of correctness, Skinner cites to

7  a point in the plea colloquy when the judge asked him whether he did what he was

8  accused of doing, and Frey interrupted, stating, "We'd stipulate to the factual basis of the

9  charge, Your Honor." (ECF No. 44 at 4 (citing ECF No. 18-6 at 9).)

10     Skinner claims that he had hesitated for five seconds when Frey interjected, which

11  shows that he did not want to enter a guilty plea. The state district court addressed this

12  claim and rejected it, citing both to the plea colloquy and Frey's testimony at the

13  evidentiary hearing. (ECF No. 19-28 at 53-54.) Even if there was a lengthy pause before

14  Frey answered the judge's question on Skinner's behalf, that is not clear and convincing

15  evidence sufficient to overcome the state court's findings of fact. Moreover, the following

16  exchange occurred immediately following Frey's interjection.

17     THE COURT: What's happening, Mr. Skinner, is I don't want to
    embarrass you, and these are fairly delicate charges – a delicate charge.
18  But if you're unhappy with your sentence and you go to prison, you may
    review what we did today. And I don't want you to send documents to me,
19  telling me that you didn't do what you just pled guilty to. So your attorney
    has offered a factual basis for the charge, which means you concede that
20  you're guilty.

21     THE DEFT: I understand.

22     THE COURT: Do you agree?

23     THE DEFT: Yes.

24  (ECF No. 18-6 at 10.)

25     Skinner has not pointed to clear and convincing evidence to rebut any of the state

26  court's findings of fact in relation to Ground 2,[1] nor has this Court been able to locate such

27     [1]With his reply, Skinner provides his own declaration, dated February 16, 2023,
28  the same day he filed his reply. (ECF No. 44 at 14-16.) This Court is not permitted to
    consider evidence Skinner failed to develop in state court. 28 U.S.C. § 2254((e)(2). While

1   evidence in the record before it. In sum, Skinner has not established that he did not

2   receive notice of the true nature of the charges against him when he entered his guilty

3   plea, or that his plea was the product of improper promises. He has also failed to

4   demonstrate that counsel's representation fell below an objective standard of

5   reasonableness, or that there is a reasonable probability that, but for counsel's alleged

6   errors, he would not have pleaded guilty and would have insisted on going to trial. Thus,

7   Ground 2 is denied.

8        **B.**    **Ground 3**

9        In Ground 3, Skinner claims, incorporating Ground Nine of his state habeas

10   petition, that his guilty plea is a violation of his constitutional rights because his counsel

11   provided ineffective assistance by engaging in plea negotiations while Skinner was under

12   medical duress. (ECF No. 9 at 7.) Skinner alleges that "[his] ability to function during

13   pretrial detention was severely compromised by medical duress." (ECF No. 18-37 at 40.)

14   He further alleges that counsel was ineffective "for failing to safeguard [his] best interests"

15   by not engaging in plea negotiations while he was under such duress. (*Id*.) According to

16   Skinner, he was suffering from debilitating nerve pain related to his bilateral leg

17   amputation, the effects of Crohn's disease, and a variety of other medical conditions,

18   including abnormal blood chemistry, compromised liver function, and inflammation

19   throughout his body. (*Id*. at 41-44.)

20        In denying this claim, the state district court acknowledged that Skinner "[had] a

21   myriad of medical issues," but made several findings that undermined Skinner's claim that

22   his plea was involuntary or that counsel provided ineffective assistance. (ECF No. 19-28

23   at 52-53.) Specifically, the court decided as follows:

24

25

26   _____

27   Skinner's counsel provided the same declaration (except for the date) to the state court
     in Skinner's post-conviction proceeding (ECF No. 19-6 at 15-17), this Court gives more

28   weight to Skinner's subsequent testimony at the post-conviction hearing.

First, Skinner's accident[2] was in the 1980s, nearly thirty years before the events occurring in the present case. [citation to record] Second, while Skinner may have experienced ongoing medical problems during his stay with the Washoe County Jail, the issues he presents this Court with were several months before he ever entered his plea. Third, while at the Washoe County jail, Petitioner filed several claims with the state. However, those claims never included one for medical duress. More specifically in the evidentiary hearing, the Court notes the following:

> Ms. Noble: "Did you ever file a grievance related to your claims of mistreatment in the Washoe County Jail?"
>
> Skinner: Well, all that bad mistreatment and everything which led up to the intentional [sic] rupture happened after about 30 days. And then, after I have gone to the hospital and come back, I put in a couple of grievances about *six months later*, about *unrelated things*.
>
> Ms. Noble: So you put in grievances, but not about that?
>
> Skinner: No.

(ECF No. 19-28 at 52 (emphasis in original) (footnote added).)

The state district court also noted Frey's testimony about the plea, which included Frey's statement that Skinner was "completely lucid" and understood everything, and that rather than being reluctant to enter the plea, Skinner "endorsed the plea." (*Id*. at 53.) Finally, the court also found that the plea colloquy itself demonstrated that Skinner was not entering his plea involuntarily because he was under medical duress. (*Id*.)

Here again, all of the state court's factual findings are well-supported by the record. As for rebutting the presumption of correctness, Skinner argues that the state court's decision is not entitled to deference because the court was not qualified to determine whether he was under medical duress. (ECF No. 44 at 5.) He contends that "such a determination is properly the purview of a qualified medical professional." (*Id*.) This argument lacks merit for the simple reason that it was Skinner's burden to demonstrate that his medical condition undermined the validity of his guilty plea. To the extent a medical expert could have supported his claim, Skinner, not the court, was obliged to develop such evidence.

---

[2]The District Court is referring to a motorcycle accident that resulted in the loss of Skinner's legs.

1    Skinner also argues that a comment made by the judge at sentencing shows that

2 the judge had concerns about whether Skinner entered his guilty plea voluntarily. (*Id*. at

3 10.) At one point during the sentencing hearing, the judge stated, "I am really struggling

4 with this idea that he has been compelled to plead guilty." (ECF No. 18-38 at 182.)

5 According to Skinner, the comment shows that the judge accepted his guilty plea "in the

6 face of clear doubt as to its voluntariness." (ECF No. 44 at 10.)

7    By ignoring the context in which it was made, Skinner's argument misconstrues

8 the intended meaning of the comment. The judge made the comment following the

9 testimony of Skinner's sister and the testimony of Skinner's friend and lawyer from

10 Australia, both of whom expressed their incredulity that Skinner was guilty of the charge

11 to which pleaded guilty. (ECF No. 18-38 at 140, 142, 173-74, 179-81.) Here is the

12 exchange that took place:

13         THE COURT: Mr. Frey?

14         MR. FREY: Your honor.

15         THE COURT: I am going to say or ask something because it may
    help you tailor your comments.
16
           MR. FREY: Thank you.
17
           THE COURT: I am really struggling with this idea that he has been
18    compelled to plead guilty.

19         Now, I am putting voice to a theme that is both in the PSI and Dr.
    Nielsen's report and to our two witnesses. That he's pled guilty because it's
20    a better option than facing trial, but he hasn't done anything wrong.

21 (ECF No. 18-38 at 182.)

22    Thus, the judge's comment was prompted by evidence that had been developed

23 *after* Skinner had entered his guilty plea. Rather than questioning the validity of Skinner's

24 plea, the judge was expressing his concern to Skinner's counsel that Skinner was now

25 denying his responsibility for his actions, which ran counter to the defense's position that

26

27

28

9

1  Skinner would submit to supervision as a sex offender in Australia if he were granted

2  probation.[3]

3        Here again, Skinner has failed to rebut any of the state court's findings of fact with

4  clear and convincing evidence. In addition, this Court sees no such evidence in the record

5  before it. In sum, Skinner has not established that counsel provided ineffective assistance

6  under *Hill v. Lockhart*, or that his guilty plea is invalid because he was under medical

7  duress. Thus, Ground 3 is denied.

8  **V.    CONCLUSION**

9        For the reasons set forth above, Skinner's petition for habeas relief will be denied.

10        This is a final order adverse to a habeas petitioner. As such, Rule 11 of the Rules

11  Governing Section 2254 Cases requires this Court to issue or deny a certificate of

12  appealability ("COA"). Accordingly, the Court has *sua sponte* evaluated the claims within

13  the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v.*

14  *Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

15        Under 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has

16  made a substantial showing of the denial of a constitutional right." With respect to claims

17  rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find

18  the district court's assessment of the constitutional claims debatable or wrong." *Slack v.*

19  *McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4

20  (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate

21  (1) whether the petition states a valid claim of the denial of a constitutional right and (2)

22  whether the court's procedural ruling was correct. *Id*.

23        Having reviewed its determinations and rulings in adjudicating Skinner's petition,

24  the Court declines to issue a certificate of appealability for its resolution of any procedural

25  issues or any of Skinner's habeas claims.

26

27        [3]This interpretation is supported by the exchange between the court and Frey that

28  followed. (*See* ECF No. 18-38 at 183-92.)

10

1         It is therefore ordered that Skinner's petition for writ of habeas corpus (ECF No. 9)

2  is denied. The Clerk of Court will enter judgment accordingly and close this case.

3         It is further ordered that a certificate of appealability is denied.

4         It is further ordered that Skinner's motion for judicial action (ECF No. 46) is denied

5  as moot.

6         DATED THIS 7th Day of August 2023.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE